# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | |
|---|---|
| PAUL GRAY, Individually and for Others Similarly Situated <br><br> v. <br><br> VESTA MINE SERVICES, INC. d/b/a VESTA MINE SUPPLY | **Case No. 2:24-cv-1069** <br><br> Jury Trial Demanded <br><br> FLSA Collective Action <br> Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Paul Gray (Gray) brings this class and collective action to recover unpaid wages and other damages from Vesta Mine Services, Inc. d/b/a Vesta Mine Supply (Vesta) for violations of the Fair Labor Standards Act (FLSA), the Pennsylvania Minimum Wage Act (PMWA), and Pennsylvania Wage Payment and Collection Law (WPCL).

2.      Vesta employed Gray as one of its Miners (defined below).

3.      Vesta pays Gray and its other Miners on an hourly basis.

4.      Gray and the other Miners regularly work more than 40 hours a workweek.

5.      But Vesta does not pay Gray and its other Miners for all their hours worked, including overtime hours.

6.      Instead, Vesta requires Gray and its other Miners to gather tools and equipment necessary to perform their job duties, suit out in protective clothing and safety gear necessary to safely perform their job duties, while on Vesta's and its client's premises, complete safety and operations meetings, and be ready to "cage down" into the mine before their shifts.

1

7.      Likewise, Vesta requires Gray and its other Miners to exit the mine, walk to their changing facility, wash-up, change out of their safety gear and protective clothing, store their tools and equipment, and complete paperwork after the end of their shifts, all on Vesta's and its client's premises (¶¶ 6-7 together, Vesta's pre/post shift off the clock policy).

8.      But Vesta does not pay Gray and its other Miners for the time they spend donning and doffing their safety gear and protective clothing, gathering and storing their tools and equipment, attending meetings, completing paperwork, and washing-up "off the clock" before and after their shifts.

9.      And Vesta deducts 30 minutes a day from the Miners' hours worked to record they took a meal break, regardless of whether they actually received a *bona fide*, uninterrupted meal break (Vesta's "meal deduction policy").

10.     Thus, Vesta does not pay the Miners for that time.

11.     But Gray and the other Miners do not actually receive *bona fide* meal breaks.

12.     Instead, Vesta requires Gray and the other Miners to remain on-duty and perform their regular job duties throughout their shifts, including during their so-called "meal breaks," and Vesta subjects them to work interruptions during their attempted "meal breaks."

13.     Vesta's uniform pre/post shift off the clock policy and meal deduction policy violate the FLSA and PMWA by depriving Gray and the other Miners of overtime wages for all overtime hours worked.

14.     Likewise, Vesta's uniform pre/post shift off the clock policy and meal deduction policy violate the WPCL by depriving Gray and the other Miners of earned wages for all hours worked on their regular paydays and/or following the termination of their employment.

**JURISDICTION & VENUE**

2

15.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

16.     This Court has supplemental jurisdiction of the state-law subclass claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

17.     This Court has general personal jurisdiction over Vesta because Vesta is a domestic corporation and maintains its headquarters in the Commonwealth.

18.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

19.     Specifically, Vesta employed Gray and failed to pay him for all hours worked, including overtime hours, in Greene County and Washington County, Pennsylvania, which are in this District and Division.

### PARTIES

20.     Vesta employed Gray as a Miner Shift Foreman.

21.     Throughout his employment, Vesta classified Gray as non-exempt and paid him on an hourly basis.

22.     Throughout his employment, Vesta subjected Gray to its uniform, illegal pre/post shift off the clock policy and meal deduction policy.

23.     Gray's written consent is attached as **Exhibit 1**.

24.     Gray brings this class and collective action on behalf of himself and other similarly situated Vesta Miners who were subject to Vesta's pre/post shift off the clock policy and meal deduction policy.

25.     Vesta prohibits these employees from recording their hours worked on Vesta and its client's premises donning and doffing their safety gear and protective clothing, gathering and storing

3

their tools and equipment, attending safety and operations meetings, completing paperwork, and washing-up before and after their scheduled shifts.

26.     These employees are forced to work "off the clock" and without compensation performing these duties.

27.     Thus, Vesta uniformly deprives these employees of overtime wages and earned wages.

28.     The FLSA collective of similarly situated employees is defined as:

> **All hourly Vesta miners and similar job titles who worked at any time during the past 3 years until final resolution of this Action (the "FLSA Collective Members").**

29.     Gray also seeks to represent a class under the PMWA and WPCL pursuant to FED. R. CIV. P. 23.

30.     The Pennsylvania Class of similarly situated employees is defined as:

> **All hourly Vesta miners and similar job titles who worked in, or based out of, Pennsylvania[1] during the past 3 years until final resolution of this Action (the "Pennsylvania Class Members").**

31.     The FLSA Collective Members and Pennsylvania Class Members are collectively referred to as the "Miners."

32.     Vesta is a Pennsylvania corporation headquartered in Marianna, Pennsylvania.

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

33.    Vesta may be served with process by serving its officers, directors, managing agents, or general agents at its registered address: **17 Magnolia Avenue, PO Box 337 Marianna, Washington County, Pennsylvania 15345**.

## FLSA COVERAGE

34.    At all relevant times, Vesta has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

35.    At all relevant times, Vesta has been an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

36.    At all relevant times, Vesta has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, PPE, pens, paper, etc.—that have been moved in or produced for commerce.

37.    At all relevant times, Vesta has had an annual gross volume of sales made or business done of $1,000,000 each year.

38.    At all relevant times, Gray and the other Miners have been Vesta's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

39.    At all relevant times, Gray and the other Miners have been engaged in commerce or in the production of goods for commerce.

40.    Vesta uniformly subjects Gray and its other Miners according to its illegal pre/post shift off the clock policy and meal deduction policy.

41.     Vesta applied its illegal pre/post shift off the clock policy and meal deduction policy to its Miners regardless of any alleged individualized factors, such as specific job title or geographic location.

42.     By subjecting Gray and its other Miners to its pre/post shift off the clock policy and meal deduction policy, Vesta did not pay them overtime for all hours worked in excess of 40 hours a workweek.

43.     Vesta's uniform pre/post shift off the clock policy and meal deduction policy therefore violate the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

44.     Vesta "is a product contract employer to the mining industry" that operates "with a focused work force to get your job done."[2]

45.     To meet its business objectives, Vesta hires workers, like Gray and the other Miners, who it "staffs" to its clients, including in Pennsylvania.

46.     While exact job titles, location, and precise job duties may differ, Gray and the other Miners are all subject to Vesta's same or similar illegal policy – its illegal pre/post shift off the clock policy and meal deduction policy – while performing the same or similar work.

47.     For example, Gray worked for Vesta as a Miner Shift Foreman assigned to provide services to Vesta's clients in the Miracle Run Mine in West Virgina from approximately April through September 2021, Enlow Fork Mine in Washington County, Pennsylvania from approximately October

---

[2] https://www.vestaminesupply.com/services/(last visited July 24, 2024).

2021 to March 2023, and Bailey Mine in Greene County, Pennsylvania from approximately March 2023 to April 2024.

48.    As a Miner Shift Foreman, Gray's job duties included working in Vesta's client's underground coal mines coordinating and overseeing other miners, performing "outby" and overcast duties, spraying concrete along shafts as necessary, placing new panels and opening new air vents, performing maintenance and repair on the continuous belt, conducting belt moves and placement, and resolving belt violations.

49.    Gray's job duties likewise included donning and doffing his safety gear and protective clothing, gathering and storing their tools and equipment, attending safety and operations meetings, completing paperwork, and washing-up, before and after his scheduled shifts on Vesta and its client's premises.

50.    Throughout his employment, Vesta classified Gray as non-exempt and paid him on an hourly basis.

51.    Indeed, Vesta agreed to pay Gray approximately $29 an hour for his first 40 hours worked plus overtime for his hours worked in excess of 40 in a workweek.

52.    Throughout his employment, Vesta required Gray to report his "on the clock" hours worked to Vesta through a paper timesheet on behalf of himself and the other Miners he coordinated and oversaw.

53.    Pursuant to Vesta's instruction, Gray to record his and the other Miners' shift start time when they descended underground into the mine.

54.    Pursuant to Vesta's instruction, Gray to record his and the other Miners' shift end time when they exited the mine

55. Additionally pursuant to Vesta's instruction, Gray deducted 30 minutes for a "meal break" each workday from his and the other Miners' hours, regardless of whether they actually received a *bona fide* meal break.

56. Throughout his employment, Gray typically worked approximately 9-12 hours a day for 6 to 7 days a workweek (54 to 84 hours a workweek).

57. Likewise, the other Miners typically worked approximately 9-12 hours a day for 6 to 7 days a workweek (54 to 84 hours a workweek).

58. And Gray and the other Miners perform their jobs under Vesta's supervision, in accordance with Vesta's policies and procedures, and use materials, equipment, and technology Vesta approves and supplies.

59. But Vesta does not pay Gray and the other Miners for all their hours worked.

60. Instead, Vesta subjects Gray and its other Miners to its uniform, illegal pre/post shift off the clock policy.

61. Specifically, Vesta requires Gray and the other Miners to dress out in their protective clothing and safety gear (including hard hat, headlight, reflective and fire retardant clothing, respirator and dust mask, self-contained self-rescuer (SCSR), inspect the SCSR, ear plugs, metatarsal boots, safety glasses, tracker, and belt), gather tools and equipment (including channel lock pliers, hammers, sledge hammers, crescent wrench, level, and hardware) fundamentally necessary to performing their jobs as underground coal miners, attend safety and operations meetings, and to be ready to "cage down" into the mine, all "off the clock," without compensation.

62. This took Gray and the other Miners approximately 1 hour each workday.

63.    Gray and the other Miners could not perform their job duties as coal miners in accordance with Vesta's (and its client's) policies, procedures, and expectations without this protective clothing, safety gear, tools, equipment, and meeting attendance.

64.    Gray and the other Miners could not safely perform their job duties as coal miners in accordance with Vesta's (and its client's) policies, procedures, and expectations without this protective clothing, safety gear, tools, equipment, and meeting attendance.

65.    Indeed, much of the safety gear Gray must utilize, including the SCSR, is mandated by federal regulation. *See* 30 C.F.R. § 75.1, *et seq*; *see also* 29 C.F.R. § 1910.132.

66.    The donning of protective clothing and safety gear, gathering of tools and equipment, and attending safety and operations meetings are therefore integral and indispensable work duties for Gray and the other Miners.

67.    Likewise, Vesta requires Gray and the other Miners to remove their safety gear and protective clothing, store their tools and equipment, complete paperwork, and wash up each day after his scheduled shift, all "off the clock."

68.    This took Gray and the other Miners approximately 1 hour each workday.

69.    Gray and the other Miners and could not perform their job duties as coal miners in accordance with Vesta's (and its client's) policies, procedures, and expectations without removing their safety gear and protective clothing, storing their tools and equipment, completing required paperwork, and washing up each workday.

70.    Gray and the other Miners could not safely perform their job duties as a coal miners in accordance with Vesta's (and its client's) policies, procedures, and expectations without removing his safety gear and protective clothing, storing his tools and equipment, completing required paperwork, and washing up each day.

71.    The removal of their safety gear and protective clothing, storing his tools and equipment, completing paperwork, and washing up each day are therefore integral and indispensable work duties for Gray and the other Miners.

72.    But under its pre/post shift off the clock policy, Vesta does not compensate Gray and the other Miners for the same.

73.    Further, under its meal deduction policy, Vesta deducts 30 minutes a day from Gray's and the other Miners' recorded work time for so-called "meal breaks."

74.    Vesta deducts this time regardless of whether Gray and the other Miners actually receive full, uninterrupted, 30-minute meal breaks.

75.    But Gray and the other Miners do not actually receive *bona fide* meal breaks.

76.    Instead, Vesta requires Gray and its other Miners to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

77.    And they are subjected to work interruptions during their unpaid "meal breaks."

78.    Therefore, Gray and the other Miners are not free to engage in personal activities during their unpaid "meal breaks."

79.    In other words, Gray and the other Miners are not relieved of all their work duties during their unpaid "meal breaks."

80.    Thus, Gray and the other Miners routinely spend their unpaid "meal breaks" performing work for Vesta's – not their own – predominant benefit.

81.    This unpaid time is compensable under the FLSA because Vesta knew, or should have known: (1) Gray and the other Miners were performing unpaid work during their "meal breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted meal period; (3) they were not completely relieved of all duties during their unpaid "meal breaks"; (4) they entirely

10

skipped their meal periods due to work demands; (5) their unpaid meal periods were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid meal periods because of constant work interruptions; (7) they remained on Vesta's premises or under Vesta's supervision during their unpaid meal periods; and/or (8) they spent their unpaid meal periods performing their regular duties for Vesta's predominant benefit.

82.    Vesta fails to exercise its duty as Gray's and the other Miner's employer to ensure they are not performing work that Vesta does not want performed during their unpaid "meal breaks."

83.    Thus, Vesta requested, suffered, permitted, or allowed Gray and the other Miners to work during their unpaid "meal breaks."

84.    Despite accepting the benefits, Vesta does not pay Gray and the other Miners for the compensable work they perform during their deducted "meal breaks."

85.    Thus, under Vesta's uniform, illegal meal deduction policy, Gray and the other Miners are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in willful violation of the FLSA.

86.    As a result of its illegal pre/post shift off the clock policy and meal deduction policy, Vesta failed to pay Gray and the other Miners overtime wages for all their overtime hours worked in violation of the FLSA and PMWA.

87.    And Vesta failed to pay Gray and the other Miners all their earned wages on his scheduled paydays and/or upon termination of employment in violation of the WPCL.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

88.    Gray brings his claims as a collective action under Section 216(b) of the FLSA and class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other Miners.

89.     Like Gray, the other Miners are victimized by Vesta's illegal pre/post shift off the clock policy and meal deduction policy.

90.     Other Miners worked with Gray and indicated they were paid in the same manner, performed similar work, and were subject to Vesta's same illegal pre/post shift off the clock policy and meal deduction policy.

91.     Based on his experience with Vesta, Gray is aware Vesta's illegal pre/post shift off the clock policy was imposed on the other Miners.

92.     The Miners are similarly situated in the most relevant respects.

93.     Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

94.     Rather, the putative classes are held together by Vesta's pre/post shift off the clock policy and meal deduction policy, which systematically deprive Gray and the other Miners of proper wages for all hours worked, including overtime wages.

95.     Therefore, the specific job titles or precise job locations of the various Miners do not prevent class or collective treatment.

96.     Vesta's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA, PMWA, and/or WPCL results from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the Miners.

97.     The Pennsylvania Class Members are denied "straight time" wages (at their agreed hourly rates) for all hours worked when they work fewer than 40 hours in a workweek.

98.     The Miners are similarly denied overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

99.    The back wages owed to Gray and the other Miners can therefore be calculated using the same formula applied to the same records.

100.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Vesta's records, and there is no detraction from the common nucleus of liability facts.

101.    Therefore, the issue of damages does not preclude class or collective treatment.

102.    Gray's experiences are therefore typical of the experiences of the other Miners.

103.    Gray has no interest contrary to, or in conflict with, the other Miners that would prevent class or collective treatment.

104.    Like each Miner, Gray has an interest in obtaining the unpaid wages owed under federal and Pennsylvania law.

105.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

106.    Absent this class and collective action, many Miners will not obtain redress for their injuries, and Vesta will reap the unjust benefits of violating the FLSA and Pennsylvania law.

107.    Further, even if some of the Miners could afford individual litigation, it would be unduly burdensome to the judicial system.

108.    Indeed, the multiplicity of actions would create a hardship to the Miners, the Court, and Vesta.

109.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Miners' claims.

110.    The questions of law and fact that are common to each Miner predominate over any questions affecting solely the individual members.

111.    Among the common questions of law and fact are:

    a.    Whether Vesta's pre/post shift off the clock policy failed to compensate the Miners for all hours worked.

    b.    Whether Vesta's pre/post shift off the clock policy deprived the Miners of overtime when they worked more than 40 hours in a week in violation of the FLSA and PMWA;

    c.    Whether Vesta's pre/post shift off the clock policy deprived the Miners of earned wages on their regular paydays and/or following the termination of their employment in violation of the WPCL;

    d.    Whether Vesta's meal deduction policy failed to compensate the Miners for all hours worked.

    e.    Whether Vesta's meal deduction policy deprived the Miners of overtime when they worked more than 40 hours in a week in violation of the FLSA and PMWA;

    f.    Whether Vesta's meal deduction policy deprived the Miners of earned wages on their regular paydays and/or following the termination of their employment in violation of the WPCL;

    g.    Whether Vesta's decision not to pay its Miners all overtime due was made in good faith;

    h.    Whether Vesta's failure to pay its Miners earned wages was the result of a *bona fide* dispute; and

    i.    Whether Vesta's FLSA violations were willful.

14

112.    Gray knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

113.    There are many similarly situated Miners who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

114.    The Miners are known to Vesta and can be readily identified and located through Vesta's business and personnel records.

### VESTA'S FAILURE TO PAY WAGES WAS UNREASONABLE & NOT THE RESULT OF A *BONA FIDE* DISPUTE

115.    Vesta knew it was subject to the PMWA's overtime provisions.

116.    Vesta knew the PMWA required it to pay non-exempt employees, including its Miners, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a week.

117.    Vesta knew it was subject to the WPCL.

118.    Vesta knew the WPCL required it to pay employees, including its Miners, all wages (including overtime) earned on their regular paydays and following the termination of their employment.

119.    Vesta knew each Miner worked more than 40 hours in at least one workweek during the last 3 years.

120.    Vesta knew its Miners were non-exempt employees entitled to overtime pay.

121.    Vesta knew the Miners were its hourly employees.

122.    Vesta knew it paid its Miners on an hourly basis.

123.    Vesta knew the PMWA and WPCL required it to pay employees, including its Miners, for all hours they performed compensable work.

124.    Vesta knew it had a duty to ensure its Miners were not performing work "off the clock" (without pay).

125.    Vesta knew it required its Miners to don and doff safety gear and protective clothing, gather and store tools and equipment, attend meetings, complete paperwork, and wash-up "off the clock."

126.    And Vesta knew its Miners did not receive *bona fide* meal breaks.

127.    Vesta controlled its Miners' "off the clock" procedures.

128.    Vesta knew its Miners' mandatory "off the clock" work was a fundamental requirement of their jobs with Vesta.

129.    Vesta knew its Miners' mandatory "off the clock" work was an integral and indispensable requirement of their jobs with Vesta.

130.    Vesta knew its Miners routinely performed this daily, required "off the clock" work for Vesta's benefit.

131.    In other words, Vesta knew its Miners performed compensable work "off the clock."

132.    Vesta knew it was required to pay its Miners for all their hours worked in accordance with Vesta's policies and procedures.

133.    Nonetheless, Vesta did not pay its Miners for the required "off the clock" work they performed.

134.    Vesta knew it was required to pay its Miners overtime wages for all overtime hours worked, including those worked "off the clock," under the PMWA.

135.    Nonetheless, Vesta did not pay its Miners overtime wages for all overtime hours worked, including those worked "off the clock."

136.    Likewise, Vesta knew there was no reasonable dispute with respect to whether its Miners were entitled to be paid for their hours worked "off the clock" – they were entitled to be paid for those hours.

137.    Nonetheless, Vesta failed to pay its Miners all their wages on their regular paydays and/or following the termination of their employment.

138.    Vesta's refusal to pay its Miners for the time they spent donning/doffing their safety gear and protective clothing, gathering and storing their equipment and tools, attending meetings, completing paperwork, and washing-up "off the clock" and for missed, shortened, and or interrupted "meal breaks" was unreasonable.

139.    Vesta's refusal to pay its Miners overtime wages for all overtime hours worked was unreasonable.

140.    Vesta's refusal to pay its Miners earned wages for all hours worked on their regular paydays and following the termination of their employment was unreasonable.

141.    Vesta's failure to pay its Miners their proper earned wages was not the result of a *bona fide* dispute.

142.    Vesta knew its conduct violated the PMWA and WPCL.

### VESTA'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

143.    Vesta knew it was subject to the FLSA's overtime provisions.

144.    Vesta knew the FLSA required it to pay non-exempt employees, including the Miners, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

145.    Vesta knew each Miner worked more than 40 hours in at least one workweek during the relevant period.

146.    Vesta knew it paid its Miners according to its pre/post shift off the clock policy and meal deduction policy.

147.    Vesta knew it had a duty to ensure its Miners were not performing work "off the clock" (without pay).

148.    Vesta knew it required its Miners to don and doff safety gear and protective clothing, gather and store tools and equipment, attend meetings, complete paperwork, and wash-up "off the clock."

149.    And Vesta knew it did not provide its Miners with *bona fide* meal breaks.

150.    Vesta controlled its Miners' "off the clock" procedures.

151.    Vesta knew its Miners' mandatory "off the clock" work was a fundamental requirement of their jobs with Vesta.

152.    Vesta knew its Miners' mandatory "off the clock" work was an integral and indispensable requirement of their jobs with Vesta.

153.    Vesta knew its Miners routinely performed this daily, required "off the clock" work for Vesta's predominant benefit.

154.    In other words, Vesta knew its Miners performed compensable work "off the clock."

155.    Vesta knew its pre/post shift off the clock policy failed to compensate the Miners for all hours worked, including overtime hours.

156.    Vesta knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

157.    Vesta knowingly, willfully, and/or in reckless disregard carried out its illegal pre/post shift off the clock policy and meal deduction policy that systematically deprived the Miners of overtime for their hours worked over 40 in a workweek in violation of the FLSA.

<u>C<small>OUNT</small> I</u>
F<small>AILURE TO</small> P<small>AY</small> O<small>VERTIME</small> W<small>AGES</small> U<small>NDER THE</small> FLSA
(FLSA C<small>OLLECTIVE</small>)

158.    Gray brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

159.    Vesta violated, and is violating, the FLSA by employing non-exempt employees (Gray and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked in excess of 40 in a workweek.

160.    Vesta's unlawful conduct harmed Gray and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

161.    Accordingly, Vesta owes Gray and the other FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

162.    Because Vesta knew, or showed reckless disregard for whether, its pre/post shift off the clock policy violated the FLSA, Vesta owes Gray and the other FLSA Collective Members these wages for at least the past 3 years.

163.    Vesta is also liable to Gray and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

164.    Finally, Gray and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

<u>C<small>OUNT</small> II</u>
F<small>AILURE TO</small> P<small>AY</small> O<small>VERTIME</small> W<small>AGES</small> U<small>NDER THE</small> PMWA
(P<small>ENNSYLVANIA</small> C<small>LASS</small>)

165.    Gray brings his PMWA claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 23.

19

166.    VESTA's conduct violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*).

167.    At all relevant times, Vesta was subject to the PMWA because Vesta was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

168.    At all relevant times, Vesta employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

169.    The PMWA requires employers, like Vesta, to pay non-exempt employees, including Gray and the other Pennsylvania Class Members, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

170.    By imposing its illegal pre/post shift off the clock policy and meal deduction policy on Gray and the other Pennsylvania Class Members, Vesta violated 43 PA. STAT. § 333.104(c) and/or 34 PA. CODE §§ 231.41-43.

171.    Specifically, Vesta violated, and is violating, the PMWA by employing non-exempt employees (Gray and the other Pennsylvania Class Members) for workweeks in excess of 40 hours without paying them overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

172.    Vesta's unlawful conduct harmed Gray and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

173.    Accordingly, Vesta owes Gray and the other Pennsylvania Class Members the difference between the rate actually paid and the proper overtime rate plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

174.    Finally, Gray and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

### COUNT III
### FAILURE TO PAY EARNED WAGES UNDER THE WPCL
### (PENNSYLVANIA CLASS)

175.    Gray incorporates all other paragraphs by reference.

176.    Gray brings his WPCL claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

177.    Vesta's conduct violates the WPCL (43 PA. STAT. §§ 260.1, *et seq.*).

178.    At all relevant times, Vesta was subject to the WPCL because Vesta was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

179.    At all relevant times, Vesta employed Gray and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

180.    The WPCL requires employers, like Vesta, to pay employees, including Gray and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

181.    Vesta violated, and is violating, the WPCL by depriving its Pennsylvania Class Members of the overtime wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

182.    Gray's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

183.    Vesta's unlawful conduct harmed Gray and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

184.    Vesta's failure to pay Gray and the other Pennsylvania Class Members earned wages was not the result of a *bona fide* dispute.

185.    Rather, Vesta knowingly failed to pay earned wages to Gray and the other Pennsylvania Class Members.

186.    Accordingly, Vesta owes Gray and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

187.    Vesta also owes Gray and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid wages. *See* 43 PA. STAT. § 260.10.

188.    Finally, Gray and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

189.    Gray demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Gray, individually and on behalf of the other Miners, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Miners allowing them to join this action by filing a written notice of consent;

b.    An Order designating the Pennsylvania Class as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Gray and his counsel to represent the interests of the Miners;

     d.        An Order finding Vesta liable to Gray and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus liquidated damages in an amount equal to their unpaid overtime wages;

     e.        An Order finding Vesta liable to Gray and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

     f.        An Order finding Vesta liable to Gray and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to 25% of their unpaid wages;

     g.        A Judgment against Vesta awarding Gray and the Miners all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, PMWA, and WPCL;

     h.        An Order awarding attorney's fees, costs, and expenses;

     i.        Pre- and post-judgment interest at the highest applicable rates; and

     j.        Such other and further relief as may be necessary and appropriate.

July 25, 2024

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: */s/ Michael Josephson*
Michael A. Josephson, Esquire
PA ID No. 308410
Andrew W. Dunlap, Esquire
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Joshua P. Geist, Esquire
PA ID No. 85745
William F. Goodrich, Esquire
PA ID No. 30235
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

Richard J. (Rex) Burch, Esquire
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR GRAY AND THE MINERS**