IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL GRAY, </br></br>  Plaintiff, </br></br> v. </br></br> VESTA MINE SERVICES, INC., </br></br>  Defendant. | Civil Action No. 2:24-cv-01069-KT </br></br> Magistrate Judge Kezia O. L. Taylor |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff's Motion for Conditional Certification and Court-Authorized Notice. ECF No. 38. For the reasons below, Plaintiff Gray's Motion for Conditional Certification and Court-Authorized Notice is GRANTED, but the Court will order the parties to (1) meet and confer to discuss the proposed notice, consent form, and methods of distribution to potential opt-in members, and (2) submit a joint proposal to the Court within thirty days.

### I. PROCEDURAL BACKGROUND

Plaintiff Paul Gray ("Gray") initiated this action on July 25, 2024, against his former employer, Vesta Mine Services, Inc. d/b/a Vesta Mine Supply ("Vesta"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 et seq. ECF No. 1. Gray contends that Vesta failed to compensate its hourly employees for all hours worked "off the clock," thereby depriving them of both regular wages and overtime compensation and seeks unpaid overtime wages. *Id.* Gray filed a Motion for Conditional Certification and Court-Authorized Notice, and a Brief, on May 2, 2025. ECF Nos. 38, 39. Pursuant to 29 U.S.C. § 216(b), Gray seeks to conditionally certify a collective

of "all hourly Vesta miners and similar job titles who worked at any time during the past 3 years until final resolution of this Action." *Id.* Concurrently, Gray asks the Court to: (1) approve the proposed Notice and Consent forms and the associated email and text message scripts; (2) authorize the proposed notice methods; (3) order Vesta to produce contact information for the putative collective within ten days of an order granting the motion; (4) approve a 60-day notice period; and (5) permit the issuance of one reminder notice during the notice period. *Id.* Vesta submitted its Response and Brief in Opposition on May 23, 2025. ECF Nos. 44, 45. Plaintiff Gray's Motion is now ripe for review.

## II. **<u>FACTUAL BACKGROUND</u>**

Because we write primarily for the parties who are intimately familiar with this case, we set forth only those facts necessary to our conclusion. Vesta provides labor to the mining industry and employs workers such as Gray and other miners to perform maintenance and repair work in coal mines located in West Virginia and Pennsylvania. ECF Nos. 39 at 7, 39-1 ¶¶ 3-4; 39-2 ¶¶ 3-4; 39-3 ¶¶ 3-4. Gray and the miners are all non-exempt, paid by the hour, and employed by Vesta. ECF Nos. 39 at 7 – 10; 39-1 ¶¶ 3-4; 39-2 ¶¶ 3-4; 39-3 ¶¶ 3-4. Gray alleges that he and these miners regularly worked more than 40 hours per week but were not compensated for all time worked. ECF No. 39 at 8 -10. Specifically, Gray claims that Vesta tracks work hours only from the time miners physically enter the mine until they exit, through electronic tracking systems and handwritten timesheets. ECF No. 39 at 8 – 9. Vesta, however, does not record time miners spend performing work outside the mine, including pre- and post-shift duties such as donning required safety gear ("PPE"), attending mandatory safety meetings, waiting for permission to begin work, and removing PPE. ECF Nos. 39 at 9; 39-1 ¶¶ 7-13; 39-2 ¶¶ 7-13; 39-3 ¶¶ 7-13. According to Gray, these pre- and post-shift activities typically require an additional 10 to 30 minutes before

and after each shift.  ECF Nos. 39 at 9; 39-1 ¶ 8; 39-2 ¶ 8; 39-3  ¶ 8.  Safety meetings, which occur about one to three times per week, last an additional 15 to 30 minutes, and miners often must wait five minutes to one hour before being permitted to begin work.  ECF Nos. 39 at 9; 39-1 ¶¶ 7 – 11; 39-2 ¶¶ 7 – 11; 39- 3 ¶¶ 7 – 11.  None of this time is compensated under Vesta's timekeeping system.  ECF No. 39 at 9.  And Gray claims that Vesta enforces a uniform meal deduction policy, under which 30 minutes are automatically deducted each day for meal breaks, even though miners often work through these periods due to the nature of underground mining.  ECF Nos. 39 at 9 -10; 39-1 ¶¶ 14-16; 39-2 ¶¶ 14-16; 39-3 ¶¶ 14-16.  Supervisors also have reportedly directed miners to record unpaid meal breaks even when no break was taken.  ECF No. 39 at 10.  These practices, which exclude pre-shift, post-shift, and meal-period work from compensation, result in systematic underpayment of wages and overtime in violation of federal and state labor laws.  ECF Nos. 38, 39.

### III.  LEGAL STANDARD

Congress designed the FLSA "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *overruled on other grounds by sub nom. Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) (citation and internal quotation marks omitted).  In this vein, the FLSA contains a "collective action mechanism" affording employees leave to bring an FLSA action on "behalf of himself ... and other employees similarly situated."  *Id.* (citation and internal quotation marks omitted).  The collective action mechanism, however, prohibits an employee from being "a party plaintiff to any such action unless he gives his consent in writing to become such a party . . . ."  *Id.* (citation and internal quotation marks omitted).

Courts utilize a two-step certification analysis to decide whether employees "who purport to join a collective action are similarly situated" and can move their collective action lawsuit forward. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). The first step is called conditional certification, the current posture here. *Id.* This step "requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Id.* (quoting *Zavala v. Walmart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)).

To obtain conditional certification, "plaintiffs meet the standard by producing some evidence indicating common facts among the parties' claims, and/or a common policy [or practice] affecting all the collective members." *Meals v. Keane Frac GP LLC*, No. 16-1674, 2017 WL 2445199, at *3 (W.D. Pa. Jun. 6, 2017) (citation omitted); *see also Halle*, 842 F.3d at 224 ("Being 'similarly situated' ... means that one is subjected to some *common employer practice* that, if proved, would help demonstrate a violation of the FLSA.") (citation omitted and emphasis added). Declarations bolster the merits of a motion for conditional certification, though they are not required. *See Moore v. PNC Bank, N.A.*, No 12-1135, 2013 WL 2338251, at *6 (W.D. Pa. May 29, 2013) (quoting *Hall v. Guardsmark, LLC*, No. 11-213, 2012 WL 3580086, at *10 (W.D. Pa. Aug. 17, 2012)).

If plaintiff can satisfy his initial burden, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citation omitted). The "sole consequence" of conditional certification is the distribution of court-approved notices to potential similarly situated employees who may want to join the class action. *Halle*, 842

F.3d at 224 (quoting *Genesis Healthcare Corp.*, 569 U.S. at 75). "Conditional certification" of the collective action is merely a term of art, because it "is neither necessary nor sufficient for the existence of a representative action under the FLSA." *Zavala*, 691 F.3d at 536 (citation omitted). "Conditional certification" is quite simply the exercise of the district court's power to facilitate notice to prospective opt-ins. *Id.*[1]

## IV. DISCUSSION

Gray argues that Vesta had a common policy of not paying him and other similarly situated miners for their pre-shift, post-shift, and meal break work. ECF No. 39, at 7 – 10. Gray also requests that the Court authorize notice to Potential Opt-In Members. ECF Nos. 38, 39 at 7, 15, 16.

### A. Conditional Certification

Gray alleges that he and the miners were similarly situated under 29 U.S.C. § 216(b) because all the underground coal miners who worked for Vesta at the Pennsylvania and West Virginia Mines were hourly, non-exempt employees that were not paid for their required pre-shift, post-shift, and meal break work. ECF No. 39 at 8 – 10. To support his request for Conditional Certification, Gray provided the Court with declarations from himself and potential opt-in members Gage Utt and Matthew Starr, (collectively, the "Miners"), who all three performed similar repair and maintenance work for Vesta in coal mines for various periods between 2021 and 2025. ECF Nos. 1 ¶ 47; 39 - 1 ¶ 3;  39-2 ¶ 3; 39-3 ¶ 3. Within these declarations, Gray and the miners state that they worked as hourly, non-exempt coal mining employees for Vesta at the

---

[1] "Th[e] second stage is less lenient, and the plaintiff bears a heavier burden," *Symczyk*, 656 F.3d at 193 (citation omitted). "[W]ith the benefit of discovery," the district court "makes a conclusive determination as to whether each [opt-in plaintiff] is in fact similarly situated to the named plaintiff." *Camesi v*, 729 F.3d at 243 (quoting *Symczyk*, 656 F.3d at 192).

Pennsylvania and West Virginia Mines.  ECF Nos. 39-1 at ¶¶ 3-4; 39-2 at ¶¶ 3-4; 39-3 ¶¶ 3-4.  Each declaration attests that Vesta required these coal miners to gather and don PPE before shiftwork,  ECF Nos. 39-1 ¶ 8; 39-2 ¶ 8; 39-3 at ¶ 8, and after it ended, the Miners had to remove PPE.  ECF Nos. 39-1 ¶ 9; 39 -2 ¶ 9; ECF 39- 3 ¶ 9.  Each declaration also states that Vesta requires the Miners to attend safety meetings and wait for authorization to begin work.  ECF Nos. 39-1 ¶ 8; 39-2 ¶ 8; 39- 3.  The Employee handbook states the same.  ECF No. 39-4 §§ 4.7, 5.1.  The required PPE donning and doffing takes between ten and thirty minutes before each shift and about the same amount of time after each shift, and the equipment includes hats with lights, gloves, boots, coats, masks, and hearing protection.  ECF Nos. 39-1 ¶¶ 8, 9; 39-2 ¶¶ 8, 9; 39-3 ¶¶ 8, 9.  Further, even though they were ready to begin work, the Miners had to wait five minutes to an hour each day before they could enter the mine, though they were not paid for any time outside the mine.  ECF Nos. 39-1 ¶¶ 7, 9 – 11, 39-2 ¶¶ 7, 9 – 11; 39-3 ¶¶ 7, 9-12.  Finally, the Miners continued working through their thirty-minute meal breaks, though thirty minutes were deducted from their time even so.  ECF Nos. 39-1 ¶¶ 14-16; 39-2 ¶¶ 14-16; 39-3 ¶¶ 14-16.

      We must determine, therefore, whether the content of the declarations is sufficient to grant a conditional certification.   Gray has directed the Court's attention to many cases within our Circuit, and more than a dozen within our Court alone, he believes support his request for conditional certification.  *See* ECF 39 at 3 – 4.  Though litigation alleging illegal off the clock work is brought by aggrieved coal miners all across our nation, we need only look at our Court's remarkably similar case, from just last year, *Moore v. Consol Pennsylvania Coal Co. LLC*, No. 2:23-CV-1991, 2024 WL 1251418 (W.D. Pa. Mar. 22, 2024).  *Moore* involved coal miners who wished to bring a collective action under the FLSA against their employer, a mine owner in Pennsylvania, for failing to compensate them for pre-shift and post-shift activities.  *Id*.  We granted

conditional certification to plaintiffs, as in our case now, hourly non-exempt coal miners subjected to off the clock work through donning and doffing PPE before and after entering the mine. *Id*. We found that plaintiffs were "similarly situated" after our consideration of thirteen declarations alleging, they worked on similarly hourly-shift schedules, in similar conditions, and were subject to the same compensation and health and safety policies. *Id*. *See also Bonds v. GMS Mine Repair & Maint., Inc.*, No. 2:13-CV-1217, 2014 WL 2957394, at *1 (W.D. Pa. July 1, 2014) (miners alleging off the clock work granted conditional certification). True, the plaintiffs in *Moore* produced thirteen declarations and Gray has produced only three, with each plaintiff claiming to know similarly situated coworkers. ECF Nos. 39-1 ¶¶ 18-20, 39-2 ¶¶ 18-20, 39-3 ¶¶ 18-20. Unlike in *Moore*, however, Gray has alleged something further, that Vesta automatically deducted a thirty-minute meal break from total work time, even when Miners continued to work and did not take a meal break.

Vesta argues that Gray has not identified a uniform unlawful policy or practice applicable to all hourly miners, pointing out, for example, (1) that the miners had different tasks, (2) that not all of the listed equipment was required, some being "merely recommended," (3) that the miners reported varying waiting times before entering the mines, (4) that some miners may have been compensated from the start of their shift and not the time they entered the mine. And Vesta contends that evidence is lacking for a meal deduction policy, with time sheets allegedly showing that the three declarant miners were reliably paid for eight hours. ECF No. 45 at 6-8. These arguments are unavailing.

We addressed this in *Moore*:

> "Being similarly situated ... means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala*, 691 F.3d at 538. "The court does not consider the merits of the dispute at this time, and the plaintiff

7

> must only demonstrate that the potential class members' positions are similar, not identical, to his own." *Ornelas v. Hooper Holmes, Inc.*, No. 12-cv-3106, 2014 WL 7051868, at *2 (D.N.J. Dec. 12, 2014) (citation omitted); *see also Archer*, 2018 WL 5962470, at *3 ("[C]ourts in this Circuit regularly resolve issues of individualized inquiries at stage two of the certification process."). [T]he declarations attest that Plaintiffs and the other Potential Opt-In Members operated on similar hourly-shift schedules, worked in similar conditions, and were subject to the same compensation and health, safety, and environmental policies. [] Plaintiffs . . . declarations provide that [Defendant's] pay and health, safety, and environmental policies, as well as the working conditions, applied to all hourly underground coal mining employees. . . . (*Id.*). Under the FLSA's two-step certification analysis, this factual support is sufficient for Plaintiffs to meet their lenient[2] step one burden of showing they are similarly situated.

*Moore* at *5. Similarly, the three provided declarations attested that Vesta's policies applied to all hourly underground mining employees. These declarations attested that Vesta did not compensate the Miners for their pre-shift, post-shift, and meal break work, which caused them not to be paid for overtime work. While this memorandum opinion ought not be construed to adjudicate the merits of Gray's claims, in light of the three declarations, and other exhibits, we hold that Gray has met his burden to show that he and other miners may be similarly situated. The Court grants Gray's request for conditional certification and the issuance of notice, finding that Gray has shown beyond mere speculation that he and others are similarly situated for the first step in the FLSA collective action process.

---

[2] Defendants argue for an intermediate standard, rather than the "lenient" standard, an approach not yet adopted by our Court. We need not decide the matter now, as we find that Gray, even under the proffered "intermediate standard" (including discovery material tending to corroborate the Miners' declarations), shows satisfaction of the similarly situated requirement. *See Sloane v. Gulf Interstate Field Servs.*, No. 4:16-CV-01571, 2017 WL 1105236, at *6 (M.D. Pa. Mar. 24, 2017). (intermediate standard requires "some factual showing that the similarly-situated requirement is satisfied," "as a result of the discovery as measured against the original allegations and defenses.")

## B. Notice Documents and Methods

Gray requests that the Court approve his proposed Notice and Consent to Join form and authorize issuance of notice by U.S. mail, email, and text message, with a reminder notice halfway through the sixty-day opt-in period. (ECF Nos. 39 at 15-16, 39-1). Gray references a case from South Carolina stating that "[a]bsent reasonable objections, a plaintiff should be allowed to use the language they choose in drafting … a notice." *Pecora v. Big M. Casino*, No. 18-1422, 2019 WL 302592, at *6 (D.S.C. Jan. 23, 2019). Vesta *does* object: (1) to the time period for which class members may recover damages for unpaid wages, which ought to be back-dated from the conditional certification grant to fit the FLSA statute of limitations, and (2) to the fact that the notice was "unilaterally drafted," without raising specific objections. Certainly the former is "reasonable," though arguably the applicable time has been addressed in Gray's description of the class as "all hourly Vesta miners and similar job titles who worked at any time during the past 3 years until final resolution of this Action." In any event, District Courts have the discretion to decide whether and how such notices should be implemented. *Sperling v. Hoffman-La-Roche Inc.*, 862 F.2d 439, 447 (3d Cir. 1988). Accordingly, "[d]istrict courts may properly oversee [the notice] process in a management role." *Rood, supra. n.* 1 at *4. "[D]isputes about the form and content of any notice" are, however, "best resolved by the parties." *Id.*; *see Moore* at *6 (requiring plaintiffs and defendant to meet, confer, and propose joint notice proposal); *see also*, *Tupitza v. Roadhouse Mgmt. Corp.*, No. 1:20-cv-2, 2020 WL 6268631, at *7 (W.D. Pa. Oct. 21, 2020) (same).

The Court, therefore, declines Gray's request. The parties are well situated to reconcile their differences over form and dissemination method. *See Moore* at *6. The parties will be ordered to meet and confer to discuss the proposed notice, consent form, and methods of

9

distribution to potential opt-in members and submit a joint proposal to the Court within thirty days. *See id.* Although the Court *strongly* encourages the parties to work harmoniously and resolve the remaining notice language disputes without its intervention, they may file a motion only if they are unable to reach agreement and must attach their proposed notice as an exhibit.

## V.  CONCLUSION

For the above reasons, Plaintiff Gray's Motion for Conditional Certification and Court-Authorized Notice is GRANTED, but the Court will order the parties to (1) meet and confer to discuss the proposed notice, consent form, and methods of distribution to potential opt-in members, and (2) submit a joint proposal to the Court within thirty days.  An Order will follow.

Dated:  July 26, 2025

FOR THE COURT:

/s/  Kezia O. L. Taylor
KEZIA O. L. TAYLOR
United States Magistrate Judge